UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
TRUSTEES OF THE SHEET METALWORKERS   :
INTENRNATIONAL ASSOCIATION  LOCAL   :
NO. 38 VACATION FUND, SHEET METAL   :
WORKERS INTERNATIONAL ASSOCIATION   :
LOCAL NO. 38 INSURANCE AND WELFARE   :
FUND, SHEET METAL WORKERS   :
INTERNATIONAL ASSOCIATION LOCAL NO.   :
38 PROFIT SHARING PLAN, SHEET METAL   :
WORKERS LOCAL 38 LABOR MANAGEMENT:
COMMITTEE AND TRUST, SHEET METAL   :
WORKERS LOCAL 38 CRAFT TRAINING   :
FUND, SHEET METAL WORKERS NATIONAL   :          OPINION AND
PENSION FUND, and SHEET METAL   :          ORDER
WORKERS LOCAL 38 CRAFT TRAINING   :
BUILDING FUND,   :          09-CV-5088 (ER)
   :
        Plaintiffs,   :
   :
        v.   :
   :
LAWRENCE P. HOPWOOD, MARTIN M.   :
HOPWOOD, JR., and RICHARD J. HOPWOOD,   :
   :
        Defendants.   :
————————————————————————x

RAMOS, D.J.:

        Plaintiffs, union trust funds ("the Funds") established under the Employee Retirement

Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"), brought

this action against brothers Lawrence, Martin, and Richard Hopwood, principals of Richards

Conditioning Corporation ("RCC").  The Funds allege that RCC was party to a collective

bargaining agreement ("CBA") in which it was required to pay certain fringe benefits to the

Funds and that Martin and Richard Hopwood signed an agreement personally guaranteeing those

payments ("the Payment Agreement").

The Funds alleged four causes of action against the Hopwoods and now move for summary judgment on two of those causes of action.  First, the Funds claim that the Hopwoods breached the Payment Agreement by failing to pay the fringe benefit contributions.  Second, they claim that Martin Hopwood breached his duty as an ERISA fiduciary.

The Hopwoods counter that RCC was not party to the CBA and that they only signed the Payment Agreement under the mistaken assumption that RCC was party to the CBA.  They also contend that, because RCC is now bankrupt, the bankruptcy court, and not this court, should resolve this dispute.

For the reasons set forth below, the Court GRANTS the motion and enters summary judgment for the Funds on the breach of the Payment Agreement claim and the breach of fiduciary duty claim.

## I. BACKGROUND

### A. Facts

Local Union 38 of the Sheet Metal Workers' International Association entered into a CBA with a set of employers known as the Sheet Metal and Roofing Contractors Association of Southeastern New York ("the Association"), which has been in effect since at least 1990.  *See* Pl.'s Motion for Summary Judgment, Ex. B at 2-3, 6.  A representative of the Association signed the CBA on behalf of the group, which, as of 1990, consisted of 21 businesses including RCC. *See id.* at 2-3, 8.

The CBA provides that "[e]mployers shall contribute to the following funds on behalf of their [e]mployees according to the wage and fringe benefits negotiated by the parties."  Pl.'s

Motion, Ex. C at 20.  The CBA then lists the funds to which this obligation is owed, and that list includes each of the Funds that are Plaintiffs in this lawsuit.  *See id.*

The Funds allege that RCC was part of the Association that signed the CBA and was, therefore, party to the CBA.  *See, e.g.*, Am. Compl. ¶ 7.  The Funds have attached to their motion two lists of the members of the Association, one undated and one dated June 1990.  *See* Pl.'s Motion, Ex. B at 3, 8.  They have also attached a letter from Local Union 38 to RCC dated April 21, 1992, which states that RCC is part of the Association.  *See id.* at 5.  They have further attached an agreement between the Local Union 38 and the Association which states that each employer "will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union."  *See id.* at 7.  The authenticity of these documents is not challenged.  There is no evidence in the record before this Court that RCC ever submitted any writing withdrawing its authorization to be represented by the Association.

It is not disputed that, at times relevant to this lawsuit, RCC employed members of Local Union 38, *see, e.g., id.*, Ex. I at 3, and, according to an unrebutted affidavit filed by Fund Administrator Mark Modzeleski, RCC made fringe benefit contribution payments for its employees to the Funds of at least $25,000 per year from 1999 to 2008 and continued to make some payments in 2009 and 2010.  *See id.*, Ex. D at 8.

Martin Hopwood has been employed by RCC from 1992 to the present.  *Id.*, Ex. G at 4. From 1992 until February 26, 2009, he served as its CFO, and from that date until the present, he has served as its CEO.  *Id.*  Richard Hopwood has been employed by RCC since 2006.  *Id.*  From 2006 until February 26, 2009, he served as a Vice President, and from that date until the present,

he has served as its COO.  *Id.*  Together with Lawrence Hopwood, Martin and Richard Hopwood "made decisions regarding the payment of corporate bills on behalf of [RCC]."  *Id.* at 5.

In a deposition in this case, Martin Hopwood was asked about whether RCC paid fringe benefits to Local Union 38 and testified as follows:

> Q: And you submitted those forms because you believed that fringe benefits were owed to Local 38, based on labor provided by its members?
>
> A: At the time I did, yes.
>
> Q: Did RCC submit fringe benefit contribution forms for other jobs—
>
> A: Yes.
>
> Q: And did the company submit those contribution forms because it believed that it owed fringe benefits for labor provided by Local 38?
>
> A: It submitted the forms because it believed—yes.

*Id.*, Ex. I at 3.

In the spring of 2009, Martin and Richard Hopwood, signed the Payment Agreement with the Funds.  *Id.*, Ex. E at 3.  The Payment Agreement stated that RCC "is a signatory to a Collective Bargaining Agreement with the Sheet Metal Local 38"; that it "agrees that it owes employee benefit contributions for November and December 2008, and January 2009"; and, that it "will repay the aforementioned due and owing contributions . . . pursuant to the schedule attached."  *Id.* at 2.  The Agreement also states that Martin and Richard Hopwood "personally guarantee[d] this debt, and assume[d] personal liability for its repayment."  *Id.* at 3.

The payment schedule attached to the Agreement stated that payment would start March 6, 2009; and, that the debt would be paid in full by August 17, 2009.  *Id.* at 4.  The Hopwoods do not specifically dispute the Funds' statement that the Payment Agreement was for a sum certain

of $101,298.44.  Def.'s Response to Pl.'s Rule 56.1 Statement ¶ 6 (only disputing their *legal* obligation to pay what is owed under the Payment Agreement).

In his deposition in this case, Martin Hopwood was asked whether he underreported the hours that union employees had worked.  Pl.'s Motion, Ex. I at 5.  He admitted he had and explained it on the grounds that "rather than fire or layoff several people," he "reduce[d] the benefits."  *Id.*  He was then asked if he knew he was underreporting hours at the time, and he said yes.  *Id.* at 5-6.

Later in 2009, the Funds commissioned an audit of RCC's payments under the CBA, and, in a report dated August 12, 2009, the auditor identified an underpayment of $58,628.30 for the period of January 2008 to July 7, 2009.  *Id.*, Ex. F at 3. In an affidavit, Fund Administrator Modzeleski stated that a revised report on August 13, 2009, put the figure owed at $55,241.76. *Id.*, Ex. D at 4.  In his deposition, Martin Hopwood was asked about that audit and testified as follows:

Q: Do you dispute the audit as of today?

A: No.

Q: If I represented to you that the audit states that Richards owes approximately $55,000—

A: That sounds about right.

Q: —for hours that weren't reporting, would you have any reason to dispute that?

A: No.

*Id.*, Ex. I at 7.

RCC filed for Chapter 11 Bankruptcy, and Martin Hopwood testified in the bankruptcy case on November 20, 2009.  *See id.*, Ex. H.  In his testimony, he stated that he owned 23% of RCC.  *Id.* at 3.  He also stated that when he became CEO of the company, he was "responsible

for the entire operation of the company." *Id.* at 5.  He admitted that, in his role at RCC, he had commingled corporate funds and his personal checking account. *See id.* at 10-11.

In his unrebutted affidavit, Fund Administrator Modzeleski stated that "the total amount of fringes owed by Defendants is $216,132.24." *Id.*, Ex. D at 5.

**B. Procedural History**

The Funds filed their Complaint on June 1, 2009.  The Complaint alleged three causes of action.  First, the Funds alleged that Defendants violated 29 U.S.C. § 1145 by failing to pay the benefit contributions.  Compl. ¶¶ 16-22.  Second, the Funds alleged that Defendants were ERISA fiduciaries and breached their fiduciary duties under 29 U.S.C. § 1109(a).  *Id.* ¶¶ 23-27.  Third, the Funds alleged that Martin and Richard Hopwood breached the Payment Agreement.  *Id.* ¶¶ 28-34.

Martin and Richard Hopwood answered jointly.  Lawrence Hopwood then answered separately with two cross-claims against Martin and Richard Hopwood, claiming that he should have judgment over and be indemnified by them for any liability in this suit.  Martin and Richard Hopwood then filed an amended answer adding similar cross-claims against him.  Defendants then answered the cross-claims that the other Defendants had made against them.

The Funds filed an Amended Complaint adding a new fourth cause of action against each of the Defendants entitled "Liability of Defendants Based on Piercing the Corporate Veil."  Am. Compl. ¶¶ 35-42.  Martin and Richard Hopwood answered the Amended Complaint, reasserting their cross-claim against Lawrence Hopwood.

On September 3, 2010, the Funds moved for partial summary judgment.  On May 31, 2011, the district court issued an order stating that the Funds "failed to include with their motion

a statement of material facts, as required by Rule 56.1 of the Local Rules" and, for that reason, the court denied the motion without prejudice.  Order at 2.

The Funds filed a new motion for summary judgment on November 17, 2011 and this time included a Rule 56.1 Statement.  The motion seeks summary judgment against Martin Hopwood on the breach of ERISA fiduciary duty claim and against Martin and Richard Hopwood on the breach of the Payment Agreement claim.  *See* Pl.'s Motion at iv.  The Parties fully briefed the motion, and the case was reassigned to this Court.  On June 3, 2012, Lawrence Hopwood filed for a Chapter 11 bankruptcy, which stays all claims against him in this case.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, a district court is instructed not to "weigh evidence," but to "resolve all ambiguities and draw all inferences in favor of the non-moving party" so as to ascertain "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in the defendant's favor that there remained no genuine issue of material fact for it to resolve."  *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011).

### B. Proper Forum

The Hopwoods argue that the Funds lack standing to assert their claims in this court because the disputed money is an asset of RCC's bankruptcy estate within 11 U.S.C. § 541 and only the bankruptcy trustee has the authority to seek that money.  Def.'s Mem. at 5.  The Court

disagrees and holds that the district court is the proper forum to resolve the claims raised in the

Funds' motion for summary judgment.

The Funds have moved for summary judgment on their second and third claims.  The

Funds' second claim alleges that the Hopwoods breached their ERISA fiduciary duties under 29

U.S.C. § 1109(a) by "exercis[ing] discretionary authority or control respecting management or

disposition of assets of the Plans."  *Id.* ¶ 24.  The Funds' third claim alleges that Martin and

Richard Hopwood had breached the Payment Agreement that they "personally guaranteed."  *Id.*

¶ 31.

The claim for breach of ERISA fiduciary duty is against Martin Hopwood, not RCC.

Nevertheless, the Hopwoods contend that RCC's bankruptcy means that the bankruptcy court

should resolve this claim.  The Hopwoods rely for their argument on *In re Keene Corp.*, 164 B.R.

844 (Bankr. S.D.N.Y. 1994), in which the bankruptcy court held that "[c]laims against officers

and directors for breach of fiduciary duty, as well as claims against the knowing recipients of the

fruits of their disloyalty, are property of the estate within the meaning of Section 541 of the

Bankruptcy Code.  The trustee, therefore, is the only person with standing to bring those claims."

*Id.* at 853.  But *Keene* is not an *ERISA* fiduciary case[1] and, therefore, is inapposite.

The apposite precedent here is *Trustees of the Road Carriers Local 707 Welfare Fund v.

Goldberg*, No. 08–CV–0884 (RRM) (MDG), 2009 WL 3497493 (E.D.N.Y. Oct. 28, 2009).  The

facts of *Goldberg* are nearly identical to this case.  The defendant in *Goldberg* was president and

principal shareholder of a corporation that had filed for bankruptcy.  *Id.* at *2.  The plaintiffs

were trustees of ERISA benefit funds for union employees.  *Id.*  The plaintiffs claimed that the

bankrupt corporation "failed and refused to remit contributions to the Fund, including both

---

[1] The other cases the Hopwoods cite are also not ERISA fiduciary cases.

employee contributions deducted from employees' paychecks and employer contributions due to the Fund" and the natural person defendant "was the individual responsible for making payments to the Fund." *Id.* The plaintiffs sought "to hold defendant personally liable for the unpaid employee and employer contributions under the theory that he breached a fiduciary duty." *Id.* at *3. The district court, not the bankruptcy court, entered a default judgment for plaintiffs. *Id.* at *1. In this case as in *Goldberg*, the proper forum for determining the personal liability of the individual defendant for breach of ERISA fiduciary duty is district court.

On the claim for breach of the Payment Agreement, the Funds are making a claim for individual liability against Martin and Richard Hopwood based on their undisputed execution of the Agreement. Like the breach of ERISA fiduciary duty claim, this claim is not a claim against the RCC bankruptcy estate or its assets. The Court will not address any claims against Lawrence Hopwood, who has filed for bankruptcy and is protected by an automatic stay. The Court is only considering summary judgment against Martin and Richard Hopwood, individuals who are not bankrupt and whom the Funds allege are personally liable for the money they personally guaranteed.

### C. Breach of Payment Agreement Claim

The Funds contend that Martin and Richard Hopwood are liable for breach of the Payment Agreement, which they personally signed. *See* Am. Compl. ¶¶ 28-34. The Payment Agreement states that RCC "is required to pay certain employee benefit contributions" pursuant to the CBA and that RCC is "enter[ing] into an agreement with [the union] for repayment of these due and owing amounts." Pl.'s Motion, Ex. E at 2.

There is no dispute that the Hopwoods signed the Payment Agreement. Pl.'s Motion, Ex. E at 3; *see also* Def.'s Response to Pl.'s Rule 56.1 Statement ¶ 6 ("MMH and RJH signed the

Payment Agreement").  Defendants also do not dispute the Funds' statement that the Payment Agreement was for a sum certain of $101,298.44.  *See id.* (only disputing their *legal* obligation to pay what is owed under the Payment Agreement).  There is further no dispute that the Hopwoods have not paid the total sum owed under the Payment Agreement.  *See id.* (alleging only partial payment).

The Hopwoods contend, however, that they owe nothing under the Payment Agreement because (1) RCC did not sign the CBA; (2) RCC was, therefore, not obligated under the CBA; and, (3) Martin and Richard Hopwood are not now obligated under the Payment Agreement, which they signed only due to their mistaken belief that RCC had signed and was obligated under the CBA.  Def.'s Mem. at 8-9.  The problem with their argument is that, regardless of whether RCC signed the CBA, RCC was obligated under the CBA.

The Second Circuit considered a similar argument to the argument the Hopwoods offer here in *Brown v. C. Volante Corp.*, 194 F.3d 351 (2d Cir. 1999), and rejected it.  In *Brown*, the plaintiffs were union trust funds established pursuant to ERISA and the LMRA that were owed payments under a collective bargaining agreement with employers.  *Id.* at 352, 353.  The defendant was an employer who alleged that it had not signed the relevant agreement.  *Id.* at 352-53.  The plaintiffs brought suit for the payments they were due.  *Id.* at 353.

The Second Circuit started by explaining that the LMRA "does not require that an agreement be signed, only that it be 'written' and set forth 'a detailed basis on which . . . payments are to be made' to a trust fund.  Accordingly, an unsigned, written agreement satisfies [LMRA] Section 302(c)(5)(B)'s 'written agreement' requirement."  *Id.* at 355 (citation omitted).

The panel continued that, if "there is no dispute that the unsigned CBAs set forth a sufficiently detailed basis on which the payments were to be made, the only question is whether [defendants'] conduct manifested an intent to adopt, or agree to, the unsigned CBAs." *Id.*

In the instant case, the undisputed facts establish that conduct of the Hopwoods—who were admitted principals of RCC—manifested RCC's intent to be bound by the CBA.  First, according to Fund Administrator Modzeleski's unrebutted affidavit filed by, RCC made payments to the Funds of at least $25,000 per year from 1999 to 2008 and continued to make some payments in 2009 and 2010—a time period in which Martin and Richard Hopwood were exercising control over the payment of RCC's corporate bills.  Pl.'s Motion, Ex. D at 8.  Second, Martin Hopwood testified, consistent with Fund Administrator Modzeleski's statement, that he submitted the fringe benefit contribution forms RCC was required to submit under the CBA and did so because he believed those contributions were owed.  *Id.*, Ex. I at 3.  Third, Martin and Richard Hopwood signed the Payment Agreement, which stated that RCC "is a signatory to a Collective Bargaining Agreement with the Sheet Metal Local 38."  *Id.*, Ex. E at 2.  Fourth, Martin Hopwood said he underreported the hours worked by employees for the purpose of benefits calculation so as to avoid laying them off, indicating that he believed he owed benefit payments under the CBA.  *See id.*, Ex. I at 5-6.

Taken together, these acts establish that RCC was party to the CBA.  Therefore, the absence of RCC's signature on the CBA—the only basis on which Defendants disavow their obligations under the CBA[2]—does not provide a valid defense to the Funds' claim that the Hopwoods have breached the Payment Agreement.

---

[2] Defendants assert that "[RCC] was not a member of the Employers Association during the calendar years 2008, 2009 and 2010 and did not pay dues during such years."  Def.'s Rule 56.1 Counterstatement.  They cite only to Martin Hopwood's affidavit for this point.  Neither the Counterstatement nor the affidavit cite to any documentary evidence.  This assertion also conflicts with the undisputed fact that RCC made a payment of over $25,000 to the

The Hopwoods half-heartedly offer three other arguments.  First, they contend that they believed their guaranty was conditional on the Funds' obligation to "exhaust all remedies" prior to seeking payment.  Def.'s Mem. at 8.  But there is no language in the Payment Agreement that supports their position that the guaranty was conditional, and they cite no legal authority for it.

Second, the Hopwoods argue that the Funds have not offered a basis for the sum certain they allege is owed under the Payment Agreement other than the affidavit of Fund Administrator Modzeleski and the audit.  *Id.*  The Hopwoods, however, failed to refute the Funds' assertion in their statement of material facts.[3]  Moreover, as explained above, Martin Hopwood testified that he did not dispute the audit.  Pl.'s Motion, Ex. I at 7.

Third, the Hopwoods—remarkably, given their claim that they owe nothing under the Payment Agreement—argue that they have paid $51,561.64 on the Payment Agreement.  *Id.*  The Funds note in reply that these payments were simply payments made for fringe benefits after RCC's bankruptcy and cannot be applied to the Payment Agreement.  The Court agrees.  The Payment Agreement was for a sum certain.  Martin and Richard Hopwood are personally liable for that amount.  That after bankruptcy RCC has paid back part of the fringe benefit

---

Funds in 2008 and continued to make some payments in 2009 and 2010.  *See* Pl.'s Motion, Ex. D at 8.  But even if RCC was not paying dues to the Association during that period, the Association's documents state that each employer "will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union."  *See id.*, Ex. B at 7.  Defendants have not submitted any evidence that they gave written notice to the Association that RCC was withdrawing.

[3] As the Hopwoods are no doubt aware, "[f]acts which are not "specifically controverted by a correspondingly numbered paragraph" in a counterstatement are deemed to be admitted, pursuant to S.D.N.Y. Local Civil Rule 56.1."  *First American Intern. Bank v. Community's Bank*, No. 10 Civ. 3775 (PAE), 2012 WL 4341740, at *1 n.1 (S.D.N.Y. Sept. 21, 2012).  In their Rule 56.1 Statement, the Funds stated: "Both Defendants signed the Payment Agreement in their individual capacities and personally guaranteed payment of the past due fringes and liquidated damages described in the payment agreement, in the amount of $101,298.44."  Pl.'s Rule 56.1 Statement ¶ 6.  Defendants responded: "Deny. At the time that MMH and RJH signed the Payment Agreement, MMH and RJH were not aware that the Debtor was not a signatory to the CBA.  Therefore, there is no obligation to make payment under the Payment Agreement by the Debtor and the personal guarantees are void for the lack of an underlying obligation."  Def.'s Response ¶ 6 (citations omitted).

contributions it owes, which go beyond the amount of the Payment Agreement, does not change Martin and Richard Hopwood's personal liability under the Payment Agreement.

The Court holds that there is no genuine dispute of material fact that RCC was obligated under the CBA and that Martin and Richard Hopwood breached the Payment Agreement. Accordingly, the Court GRANTS judgment to the Funds on this claim.

### E. Breach of ERISA Fiduciary Duty Claim

The Funds allege that Martin Hopwood breached his ERISA fiduciary duties under 29 U.S.C. § 1109(a).  That provision states: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary."  29 U.S.C. § 1109(a).

Under ERISA, "a person is a fiduciary with respect to a plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21).  So the relevant question for this case is what constitutes plan "assets."

The regulations that implement ERISA define plan assets as follows:  "[T]he assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets."  29 CFR § 2510.3-102(a).

The CBA in this case provides that: "Employer contributions become vested plan assets at the time they become due and owing to the above-referenced Funds."  Pl.'s Motion, Ex. E at 17-18.  The Second Circuit has held that employers and ERISA fund trustees are "free to contractually provide" that delinquent employer contributions are plan assets.  *In re Halpin*, 566 F.3d 286, 290 (2d Cir 2009).  As discussed in detail above, there is no genuine dispute that RCC was delinquent in making employer contributions under the CBA.  Therefore, RCC, at times relevant to this litigation, possessed delinquent employer contributions that were vested ERISA plan assets.

The Second Circuit has also held that, although the CBA in *Halpin* did not state that delinquent employer contributions were plan assets, "if unpaid employer contributions [were] plan assets, the employer would automatically become an ERISA fiduciary once it failed to make the payments."  *Id.* at 292.  There is no dispute that Martin Hopwood served as CFO and then as CEO of RCC over the dates relevant to this litigation.  Pl.'s Motion, Ex. G at 4.  There is also no dispute that together with Lawrence and Richard Hopwood, he "made decisions regarding the payment of corporate bills on behalf of" RCC.  *Id.* at 5.  In fact, Martin Hopwood testified that he personally submitted fringe benefit contribution forms to Local 38.  *Id.*, Ex. I at 3.

Because RCC possessed ERISA plan assets in the form of delinquent benefit contributions and Martin Hopwood controlled the disposition of those assets, there can be no dispute that, at times relevant to this litigation, Martin Hopwood had "discretionary authority or discretionary control respecting . . . management or disposition of its assets."  29 U.S.C. § 1002(21).  Therefore, Martin Hopwood served as an ERISA fiduciary.

Under ERISA, a fiduciary has a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i)

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C.A. § 1104(A)(1).

Martin Hopwood breached his duties as an ERISA fiduciary.  He admitted under oath that he knowingly underreported the hours that union employees had worked.  Pl.'s Motion, Ex. I at 5.  Critically, he defended his underreporting hours on the ground that "rather than fire or layoff several people," he "reduce[d] the benefits."  *Id.*

In other words, Martin Hopwood knowingly provided fewer benefits to plan participants—his union employees—by underreporting their hours and reducing the benefits to which they were entitled.  Because, as "a fiduciary with respect to a plan," he "breach[ed] [one] of the responsibilities . . . imposed upon fiduciaries," he is now "personally liable to make good to such plan any losses to the plan."  29 U.S.C. § 1109(a).[4]  Martin Hopwood is therefore personally liable for all losses to the Funds, which total $216,132.24.  Pl.'s Motion, Ex. D at 5.

The Hopwoods rely in opposition on *In re Luna*, 406 F.3d 1192, 1203 (10th Cir. 2005), in which a Tenth Circuit panel stated that "[i]n [its] view, an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund."  But *Halpin*, not *Luna*, is the controlling precedent in this Circuit, and in *Halpin*, the Second Circuit stated that, "if unpaid employer contributions were plan assets,"—which they are according to the CBA in this case—"the employer would automatically become an ERISA fiduciary once it failed to make the payments."  566 F.3d at 292.

The rest of the Hopwoods' response to this claim relies almost entirely on their argument that RCC was not a signatory to the CBA.  The Court rejected this argument above.  Their only

---

[4] Martin Hopwood also admitted that, in his role at RCC, he had commingled corporate funds and his personal checking account.  Pl.'s Motion, Ex. H at 10-11.  The Funds offer other examples in which they allege Martin Hopwood, with this commingled money, diverted plan assets, but the Court chooses to rely on his admitted underreporting of benefits.

other argument specific to this claim is that personal liability under ERISA only attaches in "special circumstances," but they concede that one such case is "knowing participation in a breach of ERISA fiduciary duties." Def.'s Mem. at 11.  They then argue that the Funds "have failed to proof [*sic*] that [Martin Hopwood] 'knowingly' participated in a breach of ERISA fiduciary duties." *Id.*  But they cannot dispute Martin Hopwood's own testimony that he knowingly underreported hours.[5]

The Court holds that there is no genuine dispute of material fact that Martin Hopwood breached his duty as an ERISA fiduciary.  Accordingly, the Court GRANTS judgment to the Funds on this claim.

---

[5] The Hopwoods also offer a confusing argument that ERISA "cannot preempt" New York Lien Law.  Def.'s Mem. at 13.  The Funds' cause of action is created by ERISA.  State law cannot abolish a cause of action created by a federal statute.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to the Funds against Martin Hopwood and Richard Hopwood on their claim for breach of the Payment Agreement. The Court also GRANTS summary judgment to the Funds against Martin Hopwood on their claim for breach of his duty as an ERISA fiduciary. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 45).

The Court enters a judgment against the Martin and Richard Hopwood in the amount of $101,298.44 for breach of the Payment Agreement. The Court enters a judgment against Martin Hopwood in the amount of $216,132.24 for breach of fiduciary duty, less any amount the Funds receive from Martin and Richard Hopwood for breach of the Payment Agreement.

The Parties are directed to appear for a status conference on October 24, 2012 at 11:00 a.m.

It is SO ORDERED.

Dated: September 27, 2012
White Plains, NY

Edgardo Ramos, U.S.D.J.

17